RACHELS *v.* GARRETT.

## Opinion delivered May 1, 1922.

1. FRAUDULENT CONVEYANCES—RIGHT OF CREDITORS TO QUESTION ATTORNEY'S FEE.—Where an insolvent debtor transferred to his attorney certain notes as payment for services, the creditors could question the reasonableness of the fee.

2. ATTORNEY AND CLIENT—ELEMENTS OF FEE.—In determining the reasonableness of an attorney's fee, the court may consider the relationship between the parties, the reasonableness of the employment, the amount or importance of the subject-matter of the suit, the degree of responsibility involved, and the time and labor bestowed.

3. ATTORNEY AND CLIENT—VALUE OF ATTORNEY'S SERVICES.—In fixing the value of legal services, there being no fixed standard, the court may apply to the testimony its own experience and knowledge of the character of the services.

4. APPEAL AND ERROR—FINDING AS TO ATTORNEY'S FEE—CONCLUSIVENESS.—A finding by a chancellor that the reasonable value of an attorney's services rendered to an insolvent debtor was only $3,840 was not against the weight of the testimony.

5. FRAUDULENT CONVEYANCES—LIABILITY OF ATTORNEY.—Where an insolvent debtor transferred to his attorney notes of the face value of $6,650 in payment of services of the reasonable value of $3,840, and the attorney settled with the maker of the note for a less sum than their face value, a decree for the creditors against the attorney for the difference between such face value and the reasonable value of the services was proper.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT OF THE FACTS.

Robert D. Garrett, receiver of the First National Bank of Judsonia, Ark., brought suit in equity against C. M. Erganbright and others to cancel certain deeds and to recover judgment against them for an amount alleged to be due said bank. J. N. Rachels and others were made garnishees to the action.

C. M. Erganbright was president of said First National Bank when it closed its doors on the 3rd day of June, 1920. He had been the president for twenty years or more, and for the most of that time J. N. Rachels had been the attorney for both Erganbright and the bank.

In 1911 a tract of land was sold to satisfy a lien of $1,440 against it. Rachels became the purchaser at the sale. It was agreed between him and Erganbright that the latter should furnish the $1,440, and that the title should be taken in his name as security therefor. It was further understood between the parties that the land should be held until such time as they should agree upon a sale, and that Rachels was to have the profit arising from the sale as his fee for legal services performed for Erganbright and said bank.

No further action was taken in the matter until May, 1919, when Erganbright sold the land to his son. Erganbright reported the sale to Rachels at $5,280, and it was agreed between them that Rachels was entitled to $3,840 in payment of his fee. No payment, however, of any part of the amount was made to Rachels.

On the 26th day of April, 1920, Erganbright informed Rachels that certain persons were threatening to remove him from the board of directors of a levee and drainage district. After hearing his statement of the matter, Rachels demanded a fee of $5,000. While Erganbright was in the office, parties representing the other side of the question called Rachels to the telephone and offered him a fee of $5,000. Finally, on account of their former intimate relation, Rachels agreed to represent Erganbright for a fee of $2,500. He made a trip to St. Louis and several trips to Little Rock about the matter. He examined into the affairs of the district and represented Erganbright in the county court about the matter.

On May 29, 1920, Rachels went to Erganbright and reminded him that he owed him $3,840 for past services which had been fixed in the land deal above referred to, and also that he had contracted to pay him $2,500 for a fee in the levee and drainage matter. Rachels demanded payment of both these amounts. Erganbright told him that he did not have any money, but would give him some good notes. He told Rachels that he had the Walker Ladd notes, one for $3,000 due on the 12th of June, 1920,

and one for $3,650 due in about a year. Seeing that one of the notes matured soon, Rachels said to Erganbright, "This is about as good as money, is it not?" Erganbright replied in the affirmative, and assured Rachels that Ladd would pay him without a word. Rachels agreed to take the notes in settlement of what Erganbright owed him, and Erganbright indorsed the notes to him. The notes bore 8 per cent. interest. Rachels considered that Erganbright owed him $6,340. He considered the notes good for that amount. The face value of the notes was $6,650. After some negotiation with Ladd and his father, Rachels settled with them by receiving $3,000 in cash and taking Ladd's note for $1,500. Rachels made this kind of settlement because he needed the money, and was made to believe that Walker Ladd was not worth a great deal of money, and a great many threats and thrusts were brought to bear upon him to cause him to make this settlement.

The above facts were testified to in substance by Rachels, and his testimony was corroborated by that of Erganbright.

Erganbright disappeared on the night of June 2, 1920, and the bank closed its doors the next morning on this account. It turned out that Erganbright was a defaulter in such an amount as made the bank insolvent.

A receiver was appointed to take charge of its assets and wind up its business. The receiver obtained judgment against Erganbright in the sum of $52,615.82, and no part of this judgment has been paid by Erganbright.

The chancellor found the facts substantially as stated above and made a specific finding that Erganbright was indebted to Rachels on the 29th day of May, 1920, in the sum of $3,840. It was decreed that the receiver should recover from Rachels the sum of $2,810, being the difference between the face value of the notes which he had received from Erganbright and the amount that the court found that Erganbright was indebted to Rachels on May 29, 1920.

To reverse that decree Rachels has duly prosecuted an appeal to this court.

*John E. Miller* and *C. E. Yingling,* for appellant.

*Brundidge & Neelly,* for appellee.

HART, J. (after stating the facts). The chancellor found the facts tó be that Erganbright owed Rachels $3,840 on account of the land deal and in payment of his legal services; but further found that there was no indebtedness for the $2,500 fee charged by Rachels for his services in a threatened suit against Erganbright to oust him from his position as director on a levee and drainage board.

It will be noted that the settlement between Erganbright and Rachels on the 29th day of May, 1920, was made on the basis that Erganbright owed the $2,500 fee. The face value of the Ladd notes was $6,650, and Rachels considered them good for his indebtedness, which he claimed to be $6,340. One of the Ladd notes was for $3,000 and was due within a few days after the settlement was made.

The chancellor did not allow Rachels any fee for his services in the threatened proceedings against Erganbright relative to his removal as a levee and drainage commissioner, and the correctness of the chancellor's decision depends largely upon the correctness of his finding in this matter. The reason is that Erganbright and Rachels both considered this fee as being due in making the transfer of the notes. At that time Erganbright was largely indebted to the bank, and he had no right to transfer his assets, except in payment of debts which he actually owed.

Of course, as between Erganbright and Rachels, they had a right to make a contract for the payment of whatever fee they might agree upon. We have no concern about that. But the rights of creditors have intervened, and they may question the reasonableness of the fee. If the fee was unreasonable or not due, this would to that

amount deprive them of assets of Erganbright which they might, through the receiver, subject to the payment of their claims.

It will be noted that Erganbright employed Rachels about the drainage matter on the 26th day of April, 1920, and that he disappeared on June 2, 1920. It is true that the record shows that Rachels represented Erganbright in the county court about the matter, but it does not disclose what proceedings were actually taken. The testimony is vague and indefinite about the whole matter. In making his finding the chancellor had a right to consider the relationship between the parties, the reasonableness of the employment, the amount or importance of the subject-matter of the suit, the degree of responsibility involved, and the time and labor bestowed. There is no fixed standard by which such services can be determined, and the court may apply to the testimony its own experience and knowledge of the character of such services. *Jacoway* v. *Hall,* 67 Ark. 340, and *Sain* v. *Bogle,* 122 Ark. 14, and cases cited.

The value of the plaintiff's services in the instant case is a matter with which the chancellor must necessarily have been familiar. The whole proceedings regarding the insolvent bank were before him. This included the relationship of Rachels to Erganbright as attorney and also their relationship to the bank. When the court is informed of the nature and extent of such services, its own experience furnishes it with an important element necessary to fix their value.

The amount fixed by the chancellor was deemed by him as sufficient payment for all the services rendered by the attorney. This was necessarily the result of his finding as a whole. The chancellor found that the attorney had, under all the facts and circumstances of the case, received adequate compensation, and when we consider his knowledge of the extent and character of such services, it can not be said that his finding of fact in this respect is against the preponderance of the evidence.

Therefore, under the settled rules of this court, the finding of fact cannot be disturbed on appeal.

Again it is insisted that the chancellor should only have charged Rachels with the difference between $3,840, the amount of fees allowed him, and $4,500, the amount which Rachels actually received on the Ladd notes. It will be remembered that the court charged him with the difference between $3,840 and the face value of the Ladd notes.

The creditors had nothing to do with Rachels settling with Ladd for $4,500. One of the notes for $3,000 was due at the time. It will be noted that Rachels only received this amount in cash and took a note for the remaining $1,500. The creditors had nothing to do with this transaction. This settlement between Erganbright and Rachels was on a basis that Erganbright owed Rachels $6,340 and the face value of the notes was $6,650. They bore 8 per cent. interest, and the parties settled on the basis that the notes were about worth their face value. Therefore, we do not think the court erred in charging Rachels with the difference between the amount allowed him and the face value of the notes. He can not escape liability on the ground that he settled with Ladd for the notes for a much less sum than their face value.

It follows that the decree must be affirmed.