SAAD, EXECUTOR *v.* ARKANSAS TRUST COMPANY.

5-674                                   278 S. W. 2d 676

Opinion delivered May 9, 1955.

[Supplemental opinion on rehearing delivered June 27, 1955.]

*Richard W. Hobbs* and *B. W. Thomas,* for appellant.

*Wood, Chesnutt & Smith,* for appellee.

ROBINSON, J. This is an appeal from the allowance of a $5,000.00 executor's fee and an $8,500.00 attorneys' fee in the administration of the estate of DiMitry G. Saad.

Saad died testate about the first of January, 1952, and appellee, Arkansas Trust Company, was named executor. Appellees, Wootton, Land and Matthews, were employed as attorneys for the executor.

The deceased had operated a department store in the city of Hot Springs. An inventory filed shows personal property valued at $77,977.98 and real estate valued at $66,000.00. Claims against the estate were allowed to the extent of about $50,000.00; the widow elected to take against the will. The homestead valued at $18,-000.00 was part of the real property.

After everything was considered, it was decided advisable to operate the store. The executor did so under orders of the court for about a year, during which time about $158,000.00 passed through the hands of the executor.

Appellant claims that the personal property amounted to $73,720.98 and, based on this figure, the executor is entitled to a fee of only $2,502.87 and that the attorneys' fee should not be more than $1,500.00.

Ark. Stats., § 62-2208, paragraph (a), provides: "The personal representative shall be allowed such compensation for his services when and as earned, as the court shall deem just and reasonable, not to exceed, except as provided in sub-section b hereof, ten percentum of the first one thousand dollars, and five percentum of the next four thousand dollars, and three percentum of the balance of the value of the personal property passing through the hands of the personal representative, provided that compensation shall be allowed only on the value of such property as shall have been fully administered."

Paragraph (b) provides that the executor may be allowed an additional sum for work done in connection with the real property.

At first glance, the fees allowed by the Probate Court may appear to be a little high. It is realized, however, that the Probate Court is in a much better posi-

tion to properly evaluate the services rendered than is this court, and when the work done by the executor and attorneys, as revealed by the record, is studied, we cannot say that the Chancellor abused his discretion in the allowance of fees.

In *Jacoway* v. *Hall,* 67 Ark. 340, 55 S. W. 12, the court said:

"Being familiar with the services rendered, the judge, in fixing the allowance, could act upon his own knowledge of their value and we would not overturn his findings thereon unless clearly erroneous."

In *Lilly* v. *Robinson Mercantile Company,* 106 Ark. 571, 153 S. W. 820, it is said:

"The court was sitting as a jury in the determination of the matter and took into consideration the facts of the service performed, as well as the interested attorney's opinion of the value thereof, but he was not required to lay aside his own general knowledge and ideas of such service and the value thereof and should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinion expressed and in no .other way could he have arrived at a just conclusion."

Appellant contends that the executor's fee should be limited to the original personal property inventory as adjusted as a basis for computing the fee, and that a proper construction of the statute fixing the executor's fee would so limit it. They further contend that if the fee can be based on the amount of money passing through the executor's hands when a business is being operated and merchandise is being bought and sold, it would be entirely possible for the whole estate to be consumed in fees. It will be recalled that the court is not required to allow the executor a minimum sum; only the maximum is limited and it cannot be anticipated that the court would allow an unreasonable fee or one not earned in good faith.

In this instance, the executor actually operated the store for about a year. About $158,000 passed through its hands. It is true that an accountant was employed at a salary of $75.00 per month plus a fee of $1,000.00, but his work consisted principally of bookkeeping. Of course a business of this kind would not operate satisfactorily without a bookkeeper. There were also other employees.

In so far as the executor is concerned, it appears that $5,000.00 is not too much to be paid for the management and operation of a store the size of the one involved for a period of a year, not considering the tremendous amount of other work that was also done.

It can be seen that there was hardly a day during the two year period that the executor and the attorneys did not have to perform some duty in connection with the administration of the estate. A will contest was filed and, although the cause did not actually go to trial, the Probate Judge was in a position to know the work the attorneys for the executor did in connection with preparing for the trial. It may have been due to their diligence and hard work that the contestants did not press for a trial. An alleged holographic will was also filed for probate. The record shows that the attorneys for the executor were prompt in looking into this matter, and after they filed a motion for an examination of the alleged will by experts it was withdrawn.

It is contended that the attorneys' fee is high when the value of the estate is considered. The value of the subject of the litigation, however, is only one factor in arriving at a reasonable attorney's fee. The actual hours spent in working on the litigation are also important, and in this particular case fifty-nine separate motions, petitions, reports and orders appear on the docket. The training, skill and diligence of an attorney should not be ignored. When all of these matters are taken into consideration, we do not believe an $8,500.00 fee is unreasonable.

In *Sain* v. *Bogle,* 122 Ark. 14, 182 S. W. 515, the court said:

"We think it fairly deducible from our own cases and from the case note above referred to that in determining what is a reasonable attorney's fee it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys."

In *Rachels* v. *Garrett,* 153 Ark. 343, 240 S. W. 1071, the court said:

"The value of the plaintiff's services in the instant case is a matter with which the chancellor must necessarily have been familiar. The whole proceedings regarding the insolvent bank were before him. When the court is informed of the nature and extent of such services, its own experience furnishes it with an important element necessary to fix their value."

A lawyer, energetic and possessed of integrity and ability, has spent many long years preparing himself to look after his clients' interests in the best manner possible. He is entitled to collect fees commensurate with the position of responsibility and trust which he holds, and he is entitled to fees that will enable him to live with the dignity expected of him by the public in general.

Affirmed.

Justices GEORGE ROSE SMITH and WARD dissent.

SEAMSTER, C. J., not participating.

## ON REHEARING

ROBINSON, J. On rehearing, we have reached the conclusion that the executor's fee allowed by the trial court should be reduced. It appears that the actual

operation of the store was under the management of Mr. Otis Honeycutt; that he and Mr. Oscar W. Luebben, a Certified Public Accountant, were both paid a salary and attended to practically all of the details; and that the work done by the executor was not substantially greater than the usual and customary duties of one acting in that capacity.

The first inventory filed by the executor shows a personal property estimate of $77,977.98; we believe that this is a fair value of the personal property actually administered by the executor. On this valuation, the executor's fee would be limited to 10% of the first thousand, 5% of the next four thousand, and 3% of the balance. Ark. Stats., § 62-2208. Figured on this basis, the executor would be entitled to a fee of $2,489.34. In addition, we believe the executor is entitled to a fee of $250.00 for work done in connection with real property. Ark. Stats., § 62-2208(b). The total executor's fee would then be $2,739.34.

The petition for rehearing is granted to the extent of reducing the executor's fee as indicated.