CHAMPION *v.* CHAMPION.

5-3216                                        378 S. W. 2d 648

Opinion delivered May 11, 1964.

*George E. Pike,* for appellant.

*William C. Davis* and *Milton G. Robinson,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Lucille K. Champion, was granted an absolute divorce from appellant, Walton T. Champion, and was given custody of the four minor children. The court directed that $350.00 per month should be paid by appellant for the support of these minors, granted an attorney's fee of $1,200.00, and made the following findings relative to the personal and real property.

"That plaintiff shall pay the mortgage payments on the famliy residence located at 403 West 6th Street, Stuttgart, Arkansas, out of said sum paid to her by defendant each month, and plaintiff is hereby granted the use and occupancy of said family residence so long as

said property is used as a residence by plaintiff and/or the said minor children.

"That the household furnishings and equipment situated in the said family residence shall remain therein for the use of plaintiff and the said minor children.

"That the plaintiff is hereby awarded a one-third (⅓) interest absolutely in all personal property of defendant and said plaintiff is hereby awarded a one-third (⅓) interest for life in all real property owned by defendant; that the said interests herein awarded shall apply to all of defendant's property, both real and personal wherever situated. The estate by the entirety by which title to Lots 5 and 6, Block 1, Improvement Company's Second Addition to the City of Stuttgart, Arkansas, is now held, is hereby dissolved, and legal title to said property is hereby vested in the parties hereto as tenants in common, each of said parties owning an undivided one-half (½) thereof.

"If, within ninety (90) days from September 1, 1963, a proper and acceptable property settlement agreement has not been reached under the terms hereof, the Court hereby appoints, designates and constitutes Mr. John Gunnell as Commissioner of this Court, who, after due and proper notice as by law prescribed for judicial sales, shall proceed to take charge of all real and personal property belonging to the defendant, (wherever such property may be situated) and shall sell all of such real and personal property at the North Door of the Courthouse, Stuttgart, Arkansas, at public outcry to the highest bidder. From the proceeds of such sale, the said Commissioner shall pay all costs of such sale (including the cost of advertising in newspapers having a general circulation in the State of Arkansas, which advertising is hereby specifically authorized) from said proceeds of said sale, said Commissioner shall pay off and discharge all indebtedness which constitutes a lien or an encumbrance on said property, and shall report and hold the balance of said proceeds subject to further orders of this Court."

From the decree so entered, appellant brings this appeal.

The granting of the divorce and the order of custody are not at issue, as appellant only asserts one alleged error as follows:

"The Court erred in failing to designate and set out the specific property which plaintiff would receive and erred in not appointing commissioners to view and lay off to the plaintiff and defendant the specific lands to which they are entitled under the terms of the decree."

It will be noted from the decree (heretofore quoted) that the court did not specify the particular property to be given appellee. On the day the decree was entered, John Gunnell, Circuit and Chancery Clerk, was appointed receiver pursuant to joint petition of the parties. The parties were unable to agree on a division of the property, and appellant filed a petition to modify and amend the decree, praying that the court appoint three commissioners to divide both the personal and real property in accordance with the terms of the decree, appellant alleging that he believed that the property could be divided in kind. This petition was denied, the court finding:

"* * * no conditions have changed since the rendition of the original decree which would justify granting the prayer for relief prayed herein. The court further finds that "the question of a division of the property in kind was properly ruled upon at the time of the rendition of the final decree and has become final."

Accordingly, the only issue presented by this appeal is whether the court erred in ordering the sale of the properties, the proceeds to be divided as per the terms of the decree, instead of dividing the property in kind. The record is voluminous, but it would appear that the parties owned several lots in Stuttgart by the entirety, and Dr. Champion held title to the home place, the possession of which was awarded to Mrs. Champion and the children. Other holdings of appellant included five lots in Stuttgart, an apartment house, a farm of approxi-

mately 608 acres, known as the "Brummitt"[1] farm, the "Buckhorn"[2] farm, consisting of 2,130 acres, and 120 acres of farmland in Monroe County. The farm operations have not been profitable, and the testimony reflects that some of the lands could hardly be characterized as productive farm property; for instance, all the roads surrounding the Buckhorn farm are dirt roads, the farm is stumpy, grassy land, and according to George Harr, contained 1,000 acres of swamp land.

Albert Halley testified:

"You don't hardly get out; at one time you couldn't even drive a tractor down the road. Last year before I got my soy beans out, the latter part of October or first week of November, it started raining and I lost 10 or 15 acres of soy beans, and the road got under water."

According to Jim Shook, the land contained, "Pot holes, little sinks, low places and high places."

One witness testified that the Brummitt farm was overflowed about 75% of the time that he would visit there, and Marion Harr testified that it was mostly "waste land and overflow land * * *

"The beans this year might be eight inches high and skimpy, last year a little better, not a whole lot, and I haven't paid any attention to the cotton, and the rice, I have seen some good rice, and I have seen some you couldn't pull a combine in, you couldn't hardly walk across."

A great deal of similar testimony was offered, but probably the most pertinent fact to the issue involved is that practically all properties, real and personal, belonging to Dr. Champion, are under mortgage.

The court, in its findings, stated:

"A great deal of the testimony has concerned itself with the property rights of the parties, and the financial

---

[1] 262 acres of crop land; 78.8 acres rice allotment and 20.7 cotton allotment.

[2] 1540 crop land; 492.7 acres rice allotment; 138.7 acres cotton allotment.

condition of the parties, and primarily the financial condition of the Defendant. One thing is fairly clear and isn't subject to much dispute, if any dispute at all, and that is that the Defendant has his financial condition in an extremely unfortunate position. That is rather obvious from the testimony that has been given concerning his debts.

"The Defendant, while on the witness stand, testified at great lengths concerning the property that he owns and the amount of the indebtedness, both secured and unsecured, that he owes. There didn't seem to be any serious dispute concerning the property that he owns, and there doesn't seem to be any serious dispute that the indebtedness he testified about is correct. There possibly would be some controversy and some dispute why the debts came into being in the first place, but as to the amount of indebtedness there is no dispute or very little dispute.

"The Court will not list all of the items of indebtedness but I point up what the situation is: The Defendant testified that he owes the John Hancock Life Insurance Company in excess of $135,000.00, counting the interest that is due. He owes the Production Credit Association of Forrest City in the neighborhood of $55,000.00. He owes the First Federal Savings & Loan Association of Stuttgart, $16,000.00, and owes many other items which the Defendant has testified about and about which there seems to be no serious dispute. Those items, along with other items of indebtedness, are secured by mortgages on the real property and in some instances, personal property of the Defendant. * * * Evidence clearly indicates a bad financial condition, and I emphasize *bad*."

Of course, a Chancery Court has full authority to order a sale of property, provided the proof is satisfactory that no division in kind can be made, even though commissioners have not been appointed to make such a determination. See *Briggs* v. *Jacobs*, 228 Ark. 589, 309 S. W. 2d 201, and cases cited therein. As here pointed out by the court, a great deal of the evidence dealt with

the various properties belonging to appellant. No specific proof was offered by appellant that these properties were susceptible to division in kind; in fact, in his argument, it is stated:

" 'If there was an effort made to divide it in kind, *there would be a chance*[3] that three good men could go on the ground, view the property and set aside to Mrs. Champion the part to which she is entitled.' "

Appellant points out that the Chancellor made no finding in his decree that the lands could not be divided in kind, but it was not necessary that this specific finding be set out. *Young, Admr.,* v. *Wyatt,* 130 Ark. 371, 197 S. W. 575. It is sufficient if the pleadings and proof justify the order made; actually, the court, in effect, did make the finding, for it denied appellant's motion to appoint commissioners with this language:

"the question of a division of the property in kind was properly ruled upon at the time of the rendition of the final decree * * *"

The burden is on appellant to establish that the court erred, and from the record before us, we are unable to make such a finding.

Affirmed.

---

[3] Emphasis supplied.