St. Louis-San Francisco Railway Company *v.* Hurst.

4-5525                                              129 S. W. 2d 970

Opinion delivered June 12, 1939.

J. W. *Jamison* and *Warner & Warner,* for appellant.

*Geo. A. Hurst* and *Partain & Agee,* for appellee.

*Sam T. Poe, Tom Poe* and *Frank Pace, Jr., amici curiae.*

HOLT, J. On November 6, 1937, Virgil Hill filed suit against appellants in the Crawford circuit court to recover damages alleged to have been sustained by him on November 3, 1937, while in employ of appellants, engaged in removing a piling from a bridge on the St. Paul branch in Madison county, Arkansas. He was represented in this suit by George A. Hurst, an attorney at Fayetteville, Arkansas, and the firm of Partain & Agee, attorneys at Van Buren, Arkansas.

Prior to the institution of the above suit, Hill on November 5, 1937, had entered into a written contract with Mr. Hurst to represent him as his attorney in the cause. The contract provides: ". . .. First party has this day employed Second Party as his attorney to represent him in the presentation and prosecution of a certain cause of action he has against the St. Louis-San Francisco Railway Company for injuries sustained by him while he was helping to load piling on railroad short distance west of Baldwin, Arkansas, on the 3rd day of November.

"Second Party hereby accepts said employment and agrees to investigate said cause of action at his expense, and, if necessary, will prosecute said cause of action through all the courts, to the end that substantial remuneration be had for said injuries and for his attorney's fee and expenses. Second Party shall have fifty (50%) per cent. of all sums collected, either by suit or compromise, and in case nothing is recovered, then Second Party shall have nothing for his fee or expenses.

"It is further agreed that neither party hereto shall compromise or adjust this cause of action without the consent of the other. . . ."

Before the consummation of the above contract, Mr. Hurst engaged the services of attorneys, Dave Partain and Theron Agee, two of the above appellees, to assist him. Mr. Partain did not know Mr. Hill, had not discussed the case with him, and was not a party to the contract which Mr. Hurst made with Hill. Mr. Partain prepared the complaint at Van Buren upon the facts as detailed to him by Mr. Hurst.

After the filing of the suit the record reflects that Mr. Hurst attended court at the November, 1937, term at Van Buren. The case, however, was not reached for trial and continued to the March, 1938, adjourned term. Mr. Hurst stated that naturally he was out expense and time in connection with his attendance upon the court at Van Buren.

Plaintiff Hill, in explaining the manner in which he employed Mr. Hurst, stated that he went to Mr. Hurst's office on November 5, 1937, and remained there for about an hour and a half, detailing to Mr. Hurst the facts in connection with his case, and then signed the contract set out above. He conferred with Mr. Hurst two or three time thereafter at his office and at Mr. Hurst's home. The conference at Mr. Hurst's home lasted for about an hour and a half.

The plaintiff, Hill, met Mr. Joyce, appellants' claim agent at Combs, Arkansas, early in 1938, without previous appointment, and told Joyce that he wanted to settle his case; that he had contracted a venereal disease

and that he did not want his wife to find it out. Joyce advised him that he could not settle with him, but for Hill to see his attorney, and they agreed to meet in Fayetteville on January 7th. He met Joyce there on the 7th and told Joyce that he would settle for $100. Joyce then sent him to see his attorney, Mr. Hurst. Hill further testified that he saw Mr. Hurst at his office and told him that he wanted to settle his case and why, but did not tell Mr. Hurst the amount for which he proposed to settle, and that Mr. Hurst refused to agree to the settlement. He then went back to Joyce and told him that he would make the settlement. Joyce then told Hill that he would have to inform Hr. Hurst about it again and have Mr. Hurst come to Mr. Atkinson's office, the local attorney for the appellants in Fayetteville. Hill told Hurst what Joyce had told him and what he, Hill, was going to do, and requested Hurst to be present, but that Mr. Hurst stated he would not do it and requested Hill not to do so, saying, "No, you are not either, and you stay away from up there," but Hill went ahead and made the settlement anyway. Hill did not advise Mr. Hurst that Joyce had seen him at Combs.

Mr. Hurst testified that about the 1st of January, 1938, Hill came to him and stated that the claim agent hunted him up and told him he wanted to settle, and that, "I told him I wouldn't talk to him about the case; that I had a written contract where he had agreed not to settle the case without my consent." He stated that he told Hill not to be "messing" with the claim agent; that Hill told him he was going to see the claim agent at Mr. Atkinson's office; that Mr. Hurst stated to him, "You got no business over there." Hill stated that he wanted Mr. Hurst to go with him and let the claim agent tell him what they were going to do, and Mr. Hurst told him, "Virgil, you had better stay away from that place. If they were in earnest and wanted to settle this lawsuit, let the attorneys come and see me." Hill left Mr. Hurst's office and Mr. Hurst did not consent to the settlement.

The record further discloses that Mr. Joyce settled the claim with Hill, Mr. Hurst's client, on January 7,

1938, and that Hill signed a release for a consideration of $100. At the time, Hill signed a stipulation to dismiss the pending suit, and this was filed with the circuit clerk at Van Buren on January 13, 1938.

On February 1, 1938, above appellees as attorneys of record for plaintiff, Virgil Hill, in his suit against appellants in the Crawford circuit court, filed "Intervention and Motion" in that suit in which they sought to recover a reasonable attorneys' fee in accordance with the provisions and terms of Act 326 of the General Assembly of 1937, now § 668 of Pope's Digest, and prayed for a judgment in the sum of $1,500.

Appellant's in their response to the intervention of appellees, tendered $100 to appellees for their services rendered Hill as his attorneys. Upon the refusal of appellees to accept this amount in payment of their fee, by agreement, the cause was tried before the trial court, sitting as a jury, and resulted in a judgment in favor of appellees in the sum of $1,000. From the judgment so rendered comes this appeal.

On this state of the record, appellants first contend that intervener Hurst violated the contract, abandoned his client, and that interveners cannot recover.

Does the record reflect that attorney Hurst abandoned his client and thereby loses any rights that he may have under the contract in question? We do not think so. The facts are that Hill went to the office of attorney Hurst at Fayetteville, where a written contract was entered into, in good faith, whereby it was agreed that Mr. Hurst would represent his client in a personal injury action against appellants for fifty (50%) per cent. of the recovery. On this occasion Hill detailed to his attorney the facts in the case. Within a day or two, Mr. Hurst went to Van Buren, Arkansas, and there procured the services of a prominent firm of attorneys in that city, to assist him in the prosecution of his client's case. We must assume that whatever compensation associate counsel were to receive was to be paid by Mr. Hurst out of his part of any recovery, and not by his client, Hill. After Mr. Hurst had given the facts to

Mr. Partain, Mr. Partain prepared and immediately filed the complaint in the cause, and caused proper service to be had upon appellants.

Subsequently, at the regular November, 1937, term of the Crawford circuit court, Mr. Hurst went to Van Buren again on behalf of his client, and the case was continued and set for trial at an adjourned term of the court in March, 1938. Up to this point we think it certainly cannot be said that Mr. Hurst had, in any way, abandoned his client's interest.

Subsequently, and before the cause was reached for trial, Hill contacted Mr. Joyce, appellants' claim adjuster, and agreed to settle the cause for $100. This Hill did over the protest and against the advice of his attorney, Hurst. While it must be conceded that Hill had the right to control his lawsuit, and to settle it, with or without the consent of his attorney, we do not think that, because his counsel protested and advised against his making what he thought to be an improvident settlement, such action on the part of counsel constituted abandonment of his client and the forfeiture of any rights that he may have under the contract.

It is next contended that the contractual prohibition against compromise, without consent of intervener Hurst, was void. To support this proposition appellants cite cases decided prior to the enactment of § 668 of Pope's Digest, which is amendatory of Act 293 of 1909. Especially did they rely upon *Davis* v. *Webber*, 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81, decided by this court on February 11, 1899, long prior to the enactment of our first attorney's lien statute of 1909, *supra*. After the enactment of the 1909 statute, this court in construing that act held that a provision in a contract between an attorney and his client providing that the cause was not to be settled without the consent of the attorney, while void and unenforceable, still it is severable from the contract, and the remainder of the contract may be enforced.

In the case of *Sizer* v. *Midland Valley Railroad Company*, 141 Ark. 369, 217 S. W. 6, this court held,

quoting headnotes: "Where a contract between attorney and client stipulated that neither would settle the cause of action without the other's consent, such stipulation, though illegal, is severable from the remainder of the contract, which may be enforced." In this case, in the opinion written by the late Chief Justice Hart, the *Davis* v. *Webber* Case *supra,* relied upon by appellants, was discussed at length, and while the court held in the Davis-Webber Case that a provision in a contract between attorney and client, similar to the one in the instant case, was not severable and voided the entire contract, as the law then existed, since the passage of the 1909 Attorney's Lien Act, such provision in the contract is severable, and does not render the contract void.

Section 668 of Pope's Digest, which is amendatory of the 1909 act, does not alter the rule announced in the Sizer Case above, and we, therefore, hold that this second contention of appellants is without merit.

It is next contended that the attorney's lien statute, Pope's Digest, § 668, is unconstitutional in denying right of settlement to a party without his attorney's consent. Again we cannot agree with appellants. Pope's Digest, § 668, provides, in substance, that the compensation of an attorney for his services is governed by agreement, express or implied, "which is not restrained by law"; that from the commencement of an action the attorney who appears for or signs a pleading for him has a lien upon his client's cause of action, and it is provided that this cannot be affected by any settlement between the parties before or after judgment. To this extent, § 668 is the same as the former statute respecting an attorney's lien. Act 293, Acts 1909 (C. & M. Digest, § 628). In 1937 the former act was amended, and Pope's Digest, § 668, sets forth this amendment, which provides in substance that in case a settlement is made by the parties after suit is filed, "and without consent of such attorney," the court shall, upon motion, enter judgment for a reasonable fee in favor of such attorney and against the party in whose favor judgment may have been rendered if the cause had proceeded to trial; that the amount of such

fee shall not necessarily be limited to the amount of settlement, and if the settlement was affected by agent of such party, the judgment shall be entered against such agent, as well as the one against whom such attorney is entitled to judgment; and if such settlement is made with the knowledge or advice of the attorney of such party, the court shall also enter judgment against such attorney as well.

Is this § 668, in providing that no settlement can be made after suit is filed without the consent of such attorney, unconstitutional and void because it interferes with, or prohibits, the right of contract? We do not think so.

Missouri has an attorney's lien statute similar in all essential respects to our own statute on the subject. In the case of O'Connor v. St. Louis Transit Company, decided by the Missouri Supreme Court in June, 1906, 8 Ann. Cas. 703-707, the constitutionality of their attorney's lien law was before the court. In that case the court said (first quoting the provisions of the attorney's lien act):

"Section 1. The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, *which is not restrained by law*. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

"Section 2. In all suits in equity, and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto*, it shall be lawful for an attorney at law, either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the

institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service(s) of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, *without first procuring the written consent of such attorney,* shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as hereinabove provided between such attorney and his client. . . .

"It is insisted by appellant that this act embraces more than one subject, and is therefore violative of the constitutional provisions now being discussed. We are unable to give our assent to this contention. It is clear that the subject of this act was the making of agreements between attorney and client a lien upon the cause of action, and the purpose of it was to prevent frauds between attorneys, clients and defendants. . . ."

The court in analyzing the above provisions said: "Then follows the particular provision upon which the cause of action in the case at bar was predicated, that if any defendant or defendants, or proposed defendant or defendants, shall, after notice served as herein provided, in any manner settle any claim, suit, cause of action or action at law, with such attorney's client, before or after litigation instituted therein, *without first*

*procuring the written consent of such attorney,* he or they shall be liable to such attorney for such attorney's lien as is provided by this act. . . .

"The object and purpose of this act, the validity of which is challenged by appellant, was to provide a lien in favor of attorneys at law upon the cause of action, and we have repeatedly recognized the justness, as well as the constitutionality, of the lien provided for the mechanic, and the landlord on crops made by his tenant, and we are unwilling to say that a lien provided for the legal profession should be ignored and held unconstitutional. While the business of these classes may be essentially different, we are unable to assign any legal valid reason why a distinction should be made against the legal profession. This act in no way deprives the defendant or any one else of his rights without due process of law, and in view of the full discussion of that subject and the settled rules that have been made construing that part of the Federal Constitution, we deem it unnecessary to further discuss that proposition. . . .

"*It is insisted by appellant that this act restricts or destroys the defendant's right to contract.* We are unable to give our assent to this insistence. The provisions of this act simply create a lien upon the cause of action in favor of the attorney at law, and requires the defendant, after due notice, which creates such lien in dealing with the party as to such cause of action, that such lien shall be respected. If we are dealing with the owner of a horse, and have notice that there is a valid subsisting lien upon the horse, we would not contend for a moment that such lien could be ignored. So it is in respect to other property—in dealing with the owner of it, if we have notice of the existence of a lien, such lien cannot be ignored. Is there any difference if a defendant has notice of the existence of a lien of an attorney upon a cause of action, and the instances above cited? We think not. This law does not deprive a defendant of any of his rights. When the lien is created in dealing with the plaintiff in respect to such cause of action, he must act accordingly. It does not

deprive him of the right to make a settlement, but in making such settlement it simply requires that he shall take into consideration the fact that the attorney at law has a lien upon the cause of action, and if such lien is ignored he will be required to account to him in an action at law for the amount of such lien.''

And quoting headnote: ''Such statute is not unconstitutional, either as depriving the opposite party to the client's action of his rights without due process of law, or as restricting or destroying the opposite party's right to contract and to effect a settlement of the action.''

We think the reasoning and principles announced in the above case are applicable here, and that § 668, *supra,* is constitutional and is not violative of the inherent right of a citizen to contract.

Appellants in their fourth assignment contend that Mr. Hurst's refusal to aid his client to negotiate a settlement violates his contract and defeats recovery. We think this contention is without merit, and has already been fully answered and covered in this opinion.

It is finally contended by appellants that the fee of $1,000 awarded appellees is excessive. In this contention we are of the view that appellants are correct.

The statute in question provides for a reasonable fee for the attorney against the parties to said action and that the amount of such fee shall not necessarily be limited to the amount of compromise or settlement between the parties litigant. We think this provision of the statute in question, in providing that the fee be reasonable and not limited to the amount of the compromise or settlement, in effect, provides for a fee on a *quantum meruit basis.* In determining what would be a reasonable fee we take into consideration the amount of time and labor involved, the skill and ability of the attorneys, and the nature and extent of the litigation.

In 5 Am. Jur., p. 380, the text-writer lays down the following guide: ''Among other things to be considered are the importance and results of the case, the difficulties thereof, the degree of professional skill and ability re-

quired and exercised, the skill, experience and professional standing of the attorney. . . . The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit, although in the absence of other evidence, the court must be guided in estimating the value of attorney's services by the time or amount of labor performed as indicated by the record. Where the fee is to be contingent upon success, the magnitude of the result achieved or the doubtfulness of the case when instituted should be considered in estimating the value of the services rendered, and not the number of pleadings filed, or their length, or the number of times counsel appeared in court, or the number of hours consumed in oral argument.''

In *Davis v. Webber*, 66 Ark. 190, 49 S. W. 822, 45 L. R. A. 196, 74 Am. St. Rep. 81, this court said: ''It will not do to liken a case of this kind to a suit for damages for personal injury, or any other kind of a suit, where both the question of obtaining judgment and the amount thereof, if obtained, are trembling in the balance. This, in fact, is a suit upon a liquidated demand, where there was no issue as to the amount of the judgment, and no doubt about obtaining it. The proof shows that the lawyer's fee, based upon the contingency of final recovery, would be much less in the latter case than in the former. Necessarily so, because of the diminished labor in its prosecution, and the anxiety as to the result.''

The record reflects that two disinterested attorneys testified on behalf of appellees that their services were reasonably worth $1,500, which represented fifty (50%) per cent. of the amount sued for in the case. Another attorney testified that in his judgment a reasonable fee for the services rendered would be $1,000.

Although this testimony was not directly contradicted by appellants, the trial court, and this court on appeal, are not required to lay aside their general knowledge and ideas of values of such services, and are not entirely controlled by testimony of this nature.

As was said by this court in *Lilly* v. *Robinson Mercantile Company*, 106 Ark. 571, 153 S. W. 820: "The court was sitting as a jury in the determination of the matter and took into consideration the facts of the service performed, as well as the interested attorney's opinion of the value thereof, but he was not required to lay aside his own general knowledge and ideas of such service and the value thereof, and should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinion expressed, and in no other way could he have arrived at a just conclusion.

"It may be conceded that the opinion of the attorney familiar with the subject was entitled to great weight, but it was not to be blindly received, it was to be intelligently examined by the court trying the case in the light of his own general knowledge of the subject of inquiry and should control only as it was found to be reasonable, otherwise the opinion of the witness would be substituted for the judgment of the court."

In the case of *Shackelford* v. *Arkansas Baptist College*, 181 Ark. 363, 26 S. W. 2d 124, this court said: "Neither the trial court, nor this court on appeal, is bound by the testimony of appellant and his expert witnesses in determining the value of his services."

In our efforts to determine what would be a reasonable fee we hold that the act does not contemplate the services of more than one attorney or firm of attorneys, and the statute did not contemplate a fee for one attorney and a firm of attorneys.

This court in *Indiana Lumbermen's Mutual Ins. Co.* v. *Meyers Stave & Mfg. Company*, 158 Ark. 199, 205, 250 S. W. 18, in passing upon the reasonableness of an attorney's fee, as provided under Act 115 of 1905, now § 7670 of Pope's Digest, said: "The court allowed attorney's fee of $1,000, and, in view of another trial of the case, we deem it proper to add that this allowance was excessive, for, in fixing attorney's fees under this statute, the allowance should not be made upon a contingent fee basis nor upon the basis of the payment of more than one

attorney or one firm of attorneys in the case. *Mutual Life Ins. Co. v. Owen,* 111 Ark. 554, 164 S. W. 720.''

After careful consideration of this entire record, we have reached the conclusion that a fee of $500 would have been a reasonable fee for appellees in this case, and the judgment of the circuit court in allowing the sum of $1,000 will be modified so as to reduce the amount allowed appellees to the sum of $500. As thus modified, the judgment is affirmed.