427 P.2d 896

C. L. VAN ORMAN and C. W. Van Orman, Plaintiffs-Appellees,

v.

Jess R. NELSON and Noemie J. Nelson, his wife, Defendants-Appellants.

No. 8023.

Supreme Court of New Mexico.

April 10, 1967.

Rehearing Denied June 1, 1967.

Jess R. Nelson, pro se, LaFel E. Oman, Santa Fe, John P. Eastham, Willard F. Kitts, Albuquerque, for appellants.

Stephenson & Olmsted, Santa Fe, for appellees.

## OPINION

PER CURIAM.

This action was brought by C. L. Van Orman, Trustee for Rosie Messinger, against Jess R. Nelson and Noemie J. Nelson, his wife, to rescind certain conveyances made by Messinger to the Nelsons and to require an accounting by Jess R. Nelson. After the trial but before judgment had been entered Messinger died and C. L. Van Orman, together with C. W. Van Orman, individually, were substituted as parties plaintiff.

The judgment being adverse to Nelsons they have appealed. The following is a summary of the transactions and related matters between Nelson and Messinger based upon undisputed facts and those found by the court upon evidence which we consider substantial except as to certain of the facts which we will later discuss.

Jess R. Nelson was at all material times an attorney at law licensed to practice in New Mexico. From the year 1954 until January, 1963, he acted as attorney and business adviser for Messinger in connection with all of her legal and business affairs. This representation included the ancillary probate in Sierra County, New Mexico, of the estate of C. S. Messinger, deceased husband of Messinger, and representation of Messinger in association with Texas counsel in the administration of the C. S. Messinger estate in Texas and similar representation relating to certain mineral rights and interests of Messinger in the state of Texas.

When administration upon the estate of C. S. Messinger in the states of New Mexico and Texas had been concluded Messinger was the owner of the following real property located in Sierra County, New Mexico, and in the state of Texas:

(a) Lots 36 and 37, Hollywood Homesites addition to Hot Springs (now Truth or Consequences) and improvements hereinafter referred to as the "Arrowhead Street House".

(b) Lots 8, 9, 10, 11, 15 and 18 through 30, inclusive, Hollywood Homesites addition to Hot Springs (now Truth or Consequences) hereinafter referred to as the "unimproved lots".

(c) Tract B, Hollywood Homesites addition to Hot Springs (now Truth or Consequences) except certain portions thereof conveyed to others hereinafter designated as "Tract B".

(d) Lots 17 and 18, Block 8, McElroy No. 1 addition to Hot Springs (now Truth or Consequences) hereinafter referred to as the "Copper Street House".

(e) Messinger's residence in Truth or Consequences.

(f) Certain mineral interests in the state of Texas hereinafter referred to as the "mineral interests".

Messinger was inexperienced and uninformed in legal and business affairs. During the period she was represented and advised by Nelson he had her confidence and trust. She was eighty years of age at the time of her death and during a substantial period between 1954 and the date of her death she was in a state of progressively failing health and deteriorating mental condition.

After the relationship of attorney and client had been established between Nelson and Messinger a number of contracts were entered into from time to time between them relating to and providing for compensation to be paid to Nelson for legal services rendered and to be rendered by him for Messinger and likewise involving loans of money made and to be made by Nelson and Messinger to each other. In accordance with the terms of the contracts Messinger conveyed to Nelson all of the real estate mentioned above except her residence. The contracts reserved in Messinger a life estate or similar interest in the property conveyed or its income, or obligated Nelson to pay Messinger a fixed sum per month during her lifetime. Each of the contracts, conveyances and the facts relating to their execution will be separately stated.

On February 9, 1957, Nelson orally represented to Messinger that between 1954 and that date he had performed services for her for which he had not been paid and that such services had a value of $1,000.00; that the Arrowhead Street house had a reasonable value of $6,000.00; that the value of the life estate of a person of her age in this property was $3,000.00 with the remainder interest having a like value; that the value of all the services already performed by him, together with the value of further services relating to pending and contemplated matters in Texas, and services in connection with all of Messinger's future business and legal matters in New Mexico for the rest of her life, including all reasonable costs incident thereto would equal $3,000.00.

Nelson represented to Messinger on the same date that he would perform all of such services for a total of $3,000.00, including the $1,000.00 for past services.

Messinger believed and relied upon these representations and thereupon on February 9, 1957, executed an agreement prepared by Nelson and explained to Messinger by him. The agreement provided that Messinger would execute and deliver a warranty deed to Nelson and wife, as joint tenants, conveying to them the Arrowhead Street house, Nelson to be responsible for the expense of conveyance and cost of abstracts of title. By the agreement Nelson assigned all rents and the use of the Arrowhead Street house to Messinger for the duration of her life. Nelson likewise agreed to pay taxes, insurance, maintenance and repairs to the end that Messinger would have the use of and receive the rental income of the property during her lifetime free of expense. A provision was made in the contract adjusting the rights of the parties in the event Nelson should pre-decease Messinger. Provision was likewise made to compensate Nelson for past legal services and such services as Messinger might require in the future. The agreement obligated Nelson to pay all expenses and costs in prosecuting or settling and handling business of Messinger both in Texas and New Mexico excepting, however, actual attorney's fees if required to be paid to associate counsel in Texas.

It was further stipulated in the agreement that the actual and present cash value of property received by Nelson in payment of past and future services was the sum of $3,000.00. As of the date of the agreement the Arrowhead Street house had a reasonable market value of $6,000.00 and at the time was rented for $50.00 per month. The value of the life estate of a person of Messinger's age was less than that represented by Nelson with the result that the interest acquired by Nelson in the Arrowhead Street house exceeded $4,500.00. This value is not supported as will be shown. The agreement of February 9th was neither acknowledged nor recorded.

On February 11, 1957, Messinger executed and delivered to Nelson a deed which he had prepared conveying to him and his wife the Arrowhead Street house in joint tenancy. The deed was absolute in form and made no reference to the reserved life interest in Messinger and other matters specified in the agreement of February 9th. The deed was recorded by Nelson on the date of its delivery.

. On August 11, 1958, Nelson represented to Messinger that he had performed additional services for her and incurred additional costs of the value of $250.00, which services were not covered by the agreement of February 9, 1957. Messinger believing and relying upon Nelson's representations executed an agreement dated August 11, 1958, which had been prepared by Nelson and was explained to Messinger by him. In accordance with the agreement of August 11, 1958, it was agreed that Nelson had performed all services required of him by the agreement of February 9, 1957, and that all expenses incident to such service had been paid by him. It was further agreed that certain other legal services had been performed by him for Messinger; that the sum of $250.00 was the reasonable value thereof including disbursements and expenses. Messinger thereupon paid Nelson the sum of $250.00, which sum was not owing to him in view of the obligation contained in the agreement of February 9, 1957.

Messinger received the monthly rent from the Arrowhead Street house in accordance with the agreement of February 9, 1957, until the house was damaged by fire in September, 1959. The fire damage was covered by insurance and Nelson received $3,141.45 in insurance proceeds for restoration of the house. Messinger likewise received certain funds covering loss of rental through January of 1960. The value of the house was increased by its restoration although Nelson expended only $2,404.02 in the process.

On or about January 19, 1960, Nelson represented to Messinger that the Arrowhead Street house was in the best possible condition to sell and that its reasonable rental value was $50.00 per month; that it would be to her advantage to change her right to receive rentals from the house in accordance with the February 9, 1957, agreement and to receive $50.00 per month for the rest of her life directly from Nelson or his wife. Nelson did not tell Messinger that he had already agreed to sell the house under a real estate contract for the sum of $8,000.00 with $500.00 down and payments at $85.00 per month with 8% interest per annum on the unpaid balance.

Messinger being guided by Nelson's advice and having no knowledge of the terms of the contract for the sale of the house executed an agreement, which had been prepared by Nelson and explained to Messinger by him, dated January 19, 1960, under which Nelson was authorized by Messinger to sell the Arrowhead Street house. He was permitted to retain all the proceeds of sale including the down payment. Nelson was obligated by the last mentioned agreement to pay all expenses of sale including furnishing a new water heater. In lieu of the use and rent of the house to which Messinger was entitled for her lifetime under the agreement of February 9, 1957, Nelson agreed to pay Messinger the sum of $50.00 per month on the 15th day of each month for and during her lifetime. The agreement further provided that should Nelson predecease Messinger then Nelson's wife would continue the monthly payments.

Thereafter and until the purchasers defaulted in September of 1960, Nelson received a total of $2,968.79 under the contract and following the default repaid the purchasers the sum of $600.00 for their equity. Nelson then resold the Arrowhead Street house under a real estate contract for the sum of $9,000.00 with a down payment of $1,000.00 and monthly payment of $75.00 per month with interest at 7% per annum on the unpaid balance but did not inform Messinger of the sale.

As of May 1, 1964, Nelson had received a total of $2,127.03 under the latter contract with the principal sum of $7,586.73 still owing and the contract still in force. All monthly payments of $50.00 pursuant to the January 19, 1960, agreement had been made to Messinger in the total sum of $2,-600.00 through June 15, 1964, and a total of $2,750.00 to the time of Messinger's death in September, 1964.

On October 27, 1960, Nelson represented to Messinger that he had performed addi-

tional services and advanced additional costs after August 6th, 1959, and that the value of these services and costs was greater than the value of the unimproved lots and Tract B. Messinger believing and relying upon defendant's statement executed an agreement prepared by Nelson and explained to Messinger by him obligating Messinger to convey to Nelson the unimproved lots and Tract B in payment of the claimed indebtedness. Thereafter Messinger executed a warranty deed conveying the said unimproved lots and Tract B to Nelson and his wife. The additional service for which compensation was then claimed covered the period August 6, 1959, to October 27, 1960. In view of the contract of February 9, 1957, wherein Nelson had obligated himself to furnish all future legal services to Messinger he was not entitled to additional compensation.

On June 19, 1962, Nelson represented to Messinger that he had performed additional services and advanced further costs and that Messinger owed him $440.00 in unpaid loans; that the total of these items was greater in value than a remainder interest subject to a life estate in Messinger covering royalties of the Texas mineral interests. Messinger then executed and delivered a warranty deed to Nelson conveying all of her mineral interests in Pecos, Reeves and Ward counties, Texas. The full nature and extent of these interests were not then known by either Messinger or Nelson.

On or about September 14, 1962, Nelson represented to Messinger that she owed him in unpaid loans a total of $282.05; that he had performed additional legal services not covered by the agreement of February 9, 1957; that he would loan Messinger additional sums in the future and that he would perform additional services for her thereafter. Nelson stated to Messinger that he would accept a conveyance from her of the Copper Street house subject to her life estate in the use and rents thereof as security for the payment of services rendered and to be rendered and loans

of money made and to be made to her. Nelson likewise stated that he would account to Messinger for the net proceeds in the event of the sale of the house by him after deduction of amounts then owing to him for services, costs and loans.

Messinger relying upon Nelson's statements, executed and delivered to him a warranty deed dated September 14, 1962, conveying the Copper Street house to him and his wife as joint tenants. The deed was absolute in form and made no reference to any reserved interests in Messinger. Thereafter and on the 25th of September, 1962, an agreement prepared and explained by Nelson to Messinger was executed but not placed of record, under which it was stated that Messinger retained the beneficial ownership in the Copper Street house; that the conveyance to Nelson was security for the loans made and to be made. The sale of the house was authorized on Messinger's approval or at Nelson's discretion. The agreement further provided that if the Copper Street property was not sold it would become the property of Nelson upon the death of Messinger in full payment of all the loans outstanding and professional services to that date.

From the period 1954 until January, 1963, while Nelson acted as attorney for Messinger he kept no time sheets or other records tending to indicate the amount of time spent by him as attorney or business advisor for Messinger, nor did Nelson, with the exception of one statement for $50.00, ever submit to Messinger any statement, detailed or otherwise, of his charges and expenses in her behalf. The reasonable value of all services performed and to be performed by Nelson for Messinger from February 9, 1957, and during the remainder of her life, plus reasonable and necessary costs incident to such services did not exceed $3,000.00.

With respect to each transaction and agreement between Nelson and Messinger and each conveyance from Messinger to Nelson he acted as the attorney and advisor

to Messinger while at the same time representing his own interests, which were adverse to those of Messinger, and failed to give her essential information concerning these transactions.

The value of the property or interest granted to Nelson greatly exceeded the value of the consideration received or to be received by Messinger from Nelson. At the time of trial and as a result of the conveyances and agreements Nelson held title to Tract B, the Copper Street house, the Texas mineral interests, and including the unpaid balance of the real estate contract involving the sale of the Arrowhead Street house. He had received in money the sum of $23,018.90. On the other hand and during the period involved he had paid sums of money to Messinger in compliance with the agreements, had lent money to her and performed services for her in the aggregate amount and value of $10,890.63. The finding that Nelson received in money the aggregate sum of $23,018.90 is not fully supported by the evidence as will hereafter be shown.

With respect to transactions between an attorney and his client involving the acquisition of property from the client a heavy burden is imposed upon the attorney to establish the absolute fairness of the transactions. In re Barth, 26 N.M. 93, 126, 189 P. 499, 510 (1920), we stated the rule as follows:

"The relation of attorney and client is one of the highest trust and confidence, requiring the attorney to observe the utmost good faith towards his client, and not to allow his private interests to conflict with those of his client. So zealous are the courts in maintaining unsullied the reputation of the members of the bar, its officers, and in sustaining the confidence and respect of the public in them, that very strict and rigid rules have always been enforced, under which an attorney could not maintain a purchase from his client, unless he was able to clearly show that he had made a full communication to his client of all that

he knew of advantage to the client regarding the subject of the negotiations."

The trial court reached the conclusion that as to each of these transactions Nelson had breached and violated his fiducial duties and obligations to Messinger and as a result the conveyances and agreements were voidable at the instance of Messinger or her trustee or representative. The judgment rendered, in addition to other matters, divested Nelsons of title to all of the real estate involved in the action which they held at the time of the commencement of the proceedings. A money judgment was likewise rendered against them in the amount of $12,928.27.

Seventeen points are relied upon for reversal. These points are consolidated, however, into five points of argument. The first point of argument is introductory only and has been fully considered by the court.

The second point of argument is as follows:

"THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW PERTAINING TO THE AGREEMENT OF FEBRUARY 9, 1957 (Plaintiff's Exhibit 2), AND THE ORAL AGREEMENT OF THE SAME DATE, ARE SO INCONSISTENT AS TO BE IRRECONCILABLE, AND THEREFORE CANNOT SUPPORT THE TRIAL COURT'S ULTIMATE CONCLUSIONS; A REVERSAL AND REMAND TO THE DISTRICT COURT IS THEREFORE REQUIRED."

This point according to Nelson's treatment of the argument covers points relied upon for reversal Nos. 2, 3 and 4 as follows:

"2. FINDINGS OF FACT NUMBERS 8, 9, 10, 15, 27, 44, 57 and 58 * * * ARE INCONSISTENT AND IRRECONCILABLE, AND CANNOT AND DO NOT SUPPORT THE JUDGMENT OF THE TRIAL COURT; THAT THE ERROR OF THE TRIAL COURT IN MAKING ITS FINDINGS IN THIS MANNER IS PREJUDICIAL TO DEFENDANTS."

"3. THAT SAID FINDINGS OF FACT 8, 9, 10, 15, 27, 44, 57 and 58 ARE ALSO INCONSISTENT AND IRRECONCILABLE WITH CONCLUSIONS OF LAW NUMBERS 3 AND 7 * * * AND DO NOT SUPPORT SAID CONCLUSIONS OF LAW."

"4. THAT BECAUSE OF THE TRIAL COURT'S ADOPTION OF THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, REFERRED TO POINTS 2 AND 3, SUPRA, IT IS IMPOSSIBLE TO DETERMINE WHAT THEORY THE TRIAL COURT HAS ADOPTED WITH RESPECT TO THE FORCE AND EFFECT OF PLAINTIFF'S EXHIBIT 2, THE WRITTEN AGREEMENT OF FEBRUARY 9, 1957."

The following are the findings of fact and conclusions of law considered under this point.

Finding of Fact No. 8:

"On or about February 9, 1957, Defendant made representations to Messinger, who believed and relied thereon as follows:

(a) That he had performed services for her of a value of $1,000.00 for which he had not been paid.

(b) That the value of the Arrowhead Street house was $6,000.00.

(c) That the value of a life estate of a person of Messinger's age and condition of health in said Arrowhead Street house was $3,000.00; that the value of the remainder interest in said house was $3,000.00.

(d) That, including the value of Defendant's services stated in subparagraph (a) above, the value of all services performed and to be performed by Defendant on behalf of Messinger in Texas in connection with then pending and contemplated legal matters, and in New Mexico in connection with all of the legal and business affairs of Messinger for the remainder of her life, including all reasonable and necessary attendant costs, excepting the fees and costs of associate Texas counsel, was $3,000.00.

(e) That Defendant would perform the services and advance the costs described in subparagraph (d) above, on behalf of Messinger, for $3,000.00."

Finding of Fact No. 9:

"On February 9, 1957, Messinger, believing and relying upon the representations of Defendant stated in Finding 8 above, executed an Agreement of even date therewith (Plaintiff's Exhibit 2) which was prepared and explained to Messinger by Defendant. Said agreement was executed by Defendant but was not acknowledged by either party or filed of record at any place."

Finding of Fact No. 10:

"It was the understanding and intention of Messinger, based upon the representations of Defendant stated in Finding 8 above, and upon Defendant's explanation of the significance and effect of the February 9, 1957 Agreement (Plaintiff's Exhibit 2), that Defendant would perform all of the services and advance the costs described in subparagraph (d) of Finding 8 above for $3,000.00 and that the value of the property interest to be conveyed to Defendants pursuant to said Agreement was $3,000.00."

Finding of Fact No. 15:

"Pursuant to the August 11, 1957 Memorandum Agreement (Plaintiff's Exhibit 4), Messinger paid to Defendant the sum of $250.00 specified therein, although she did not owe said sum, the Defendant Jess R. Nelson having theretofore contracted and having been paid for all future legal services to be performed by him in consideration of the execution of the deed to him in the Arrowhead Street house."

Finding of Fact No. 27:

"On October 27, 1960, Messinger, believing and relying upon the representations of Defendant stated in Finding 26 above, executed an Agreement of even date therewith (Plaintiff's Exhibit 6)

which was prepared and explained to Messinger by Defendant. Said Agreement was executed by Defendant but was not acknowledged by either party or filed or record [*sic*] at any place. Also on said date Defendant obtained from Messinger a Warranty Deed (Plaintiff's Exhibit 7), absolute in form and prepared by Defendant, conveying the unimproved lots and Tract B to Defendants as joint tenants. Said Warranty Deed was executed and acknowledged by Messinger and filed of record in Sierra County, New Mexico by Defendant on October 28, 1960; said Warranty Deed bears upon its face documentary stamps in the amount of 55 cents. That in truth and in fact, Jess R. Nelson had performed no services for Messinger for which he was entitled to collect a fee under his former agreement with Messinger, and said Tract B was not less than $700.00 in value."

Finding of Fact No. 44:

"From 1954 to January of 1963, all services performed by Defendant on behalf of Messinger in legal matters were covered by the Agreement of February 9, 1957 (Plaintiff's Exhibit 2); further, Defendant advanced on behalf of Messinger a total of $377.14 and loaned to Messinger, a total of $819.47, which sums were not covered by said Agreement and have not been repaid by Messinger to Defendant, other than as indicated in the foregoing Findings."

Finding of Fact No. 57:

"As of February 9, 1957, the reasonable value for all services performed and to be performed by Defendant for Messinger during the remainder of her life pursuant to the Agreement of even date therewith (Plaintiff's Exhibit 2), plus all reasonable and necessary attendant costs, exclusive of the costs stated in Findings 44 and 46 above, were not more than $3,000.00."

Finding of Fact No. 58:

"As of January of 1963, the reasonable value of all services to be performed by Defendant for Messinger pursuant to the Agreement of February 9, 1957 (Plaintiff's Exhibit 2), plus all reasonable and necessary attendant costs, exclusive of the costs stated in Findings 44 and 46 above, were not more than $3,000.00."

Conclusion of Law No. 3:

"An attorney-client relationship existed between Defendant and Messinger from 1954 through January of 1963. In connection with each transaction and agreement between and conveyance by Messinger to Defendant, excepting only the loan transactions and the sale of the diamond ring, Defendant breached and violated his fiducial duties and obligations to Messinger. By reason of said breaches and violations, each of said transactions, agreements and conveyances was void and Messinger was entitled to recover from Defendants all property acquired and still held by them from Messinger and all monies and other properties, including profits acquired by Defendants from the sale or exchange of property received by Defendants from Messinger, after allowing to Defendants credit for the reasonable value of all benefits conferred upon Messinger."

Conclusion of Law No. 7:

"After allowing Defendants credit for $3,000.00 for the reasonable value of all legal services performed by Defendant for Messinger pursuant to the Agreement of February 9, 1957 (Plaintiff's Exhibit 2) and all reasonable and necessary attendant costs, and for the sum of $7,890.63, itemized in Finding No. 46 for sums expended by Defendants but not covered by said Agreement, Plaintiff is entitled to recover Judgment from the Defendants as follows:

(a) Unencumbered title to Tract B.

(b) Unencumbered title to the Copper Street House.

(c) The mineral Interests in Pecos, Reeves and Ward Counties, Texas.

(d) $12,928.27 arrived at as follows:
(1) Total of items in Finding No. 45, $23,018.90 less

(2) Total credit in Finding No. 46, plus $3,000.00, value of legal services, being $10,890.63 deducted from $23,018.90."

Plaintiff's Exhibit 2 to which reference is made in the Findings of Fact and Conclusion of Law No. 7 is the agreement of February 9, 1957, involving the transfer to Nelson of the Arrowhead Street house.

■ We do not share Nelson's view that the findings of fact mentioned are inconsistent or that the conclusions of law are at a variance with the findings of fact.

In considering the findings and conclusions we bear in mind the issues to be determined by the trial court which include the rescission of agreements and conveyances between attorney and client, likewise an accounting by the attorney to the client.

Finding No. 8 states the representations that were made by Nelson to Messinger to induce her to enter into the agreement of February 9th (plaintiff's exhibit 2) and to convey the Arrowhead Street house to him.

Finding No. 9 involves the agreement of February 9th stating that it was executed in reliance upon representations in Finding No. 8.

Finding No. 10 relates to Messinger's understanding as to the effect of the agreement of February 9, 1957, based upon Nelson's representations and explanation of the agreement, in particular, that the value of services rendered and to be rendered was $3,000.00 and the value of the interest to be conveyed to Nelson was $3,000.00.

These are clearly pertinent findings and have a direct bearing upon the issue of rescission.

Finding No. 15 relates to the payment of $250.00 by Messinger to Nelson upon his demand for legal services rendered. By this finding the trial court determined that the money collected was not in fact owing in view of the agreement of February 9, 1957. We note that at the time the charge of $250.00 was made the agreement of February 9, 1957, was effective between the parties, no attempt having then been made to rescind it.

Finding No. 27 like Finding 15 relates to a charge by Nelson for legal services for which he received a conveyance of Tract B.

Both of these findings lend support to the conclusion that Nelson violated his fiducial duties and obligations to Messinger. Finding No. 15 is pertinent to the accounting issue. Finding No. 27, in addition, is a basis for rescinding the conveyance to Tract B.

Nelson concedes that a construction of consistency is possible as to these findings 8, 9, 10, 15 and 27—and in our view we do not find them inconsistent with each other. Nelson contends that Findings 44, 57 and 58 and Conclusions of Law Nos. 3 and 7 can not be reconciled with each other or with the Findings 8, 9, 10, 15 and 27. As we understand the argument it is asserted that the court found the several agreements, including the agreement of February 9, 1957, to be void; that the court also found that Nelsons were bound by the February 9th agreement.

There is no language contained in these findings or the conclusions mentioned which in our opinion can be construed as binding Nelson by the terms of the agreement of February 9th or any of the other agreements which were rescinded.

To our mind the court in finding the reasonable value of legal services rendered and to be rendered by Nelson employed the same valuation Nelson had placed upon his services as reflected by the agreement of February 9th which he had prepared. The Findings 44, 57 and 58 are determinative of the value of legal services and involve an admission by Nelson as to such value.

■ An unenforceable contract may constitute competent evidence of an admission. See Luster v. Whitlock, 203 Ky. 405, 262 S.W. 572 (1924); Alpena Lumber Co. v. Fletcher, 48 Mich. 555, 12 N.W. 849 (1882); Wise v. Midtown Motors, 231 Minn. 46, 42 N.W.2d 404, 20 A.L.R.2d 735 (1950).

From our reading of Conclusions of Law Nos. 3 and 7 we find no basis for a contention that they bind or purport to bind Nelson by the terms of the agreement of February 9th.

Further, under Part II of appellants' argument it is stated that the trial court's decision can be construed as holding that prior to the execution of the agreement of February 9th, an oral agreement existed between the parties which contained the same provisions as the written agreement (agreement of February 9th). That the trial court through its findings was binding Nelson by the oral agreement and at the same time concluding that it was void—thus rendering the findings and conclusions inconsistent. To our mind this argument has no merit for the reason that the findings nowhere justify the conclusion that the trial court found the existence of an oral agreement.

In support of the argument advanced under Point II of argument, Loveridge v. Loveridge, 52 N.M. 353, 198 P.2d 444 (1948), is cited. The case is not applicable for the reason that we do not consider the decision to have been based upon separate and irreconcilable theories.

Appellants' Point III of argument is as follows:

"THE ORAL AGREEMENT OF FEBRUARY 9, 1957, CAN HAVE NO EXISTENCE OR VALIDITY SEPARATE OR APART FROM PLAINTIFF'S EXHIBIT 2, THE WRITTEN AGREEMENT OF THAT SAME DATE."

▉ Appellants treat Finding of Fact No. 8 above quoted as a finding that an oral agreement was entered into on February 9th, 1957, between Nelson and Messinger and as expressing its terms. We do not consider it as finding the existence of an oral agreement between the parties. The finding relates to representations made by Nelson to Messinger to induce her to execute the written agreement of February 9, 1957. In our opinion the decision is not based in any respect upon an oral agreement of February 9, 1957, nor did the court so find or conclude. We find Point III of argument to be without merit.

It is contended by the fourth point of argument that the agreement of February 9th, 1957, was valid since the property interest obtained by Nelsons in the Arrowhead Street house was fair and reasonable in comparison with the value retained by Messinger. It is further argued under the same point that for a like reason the agreement of January 19, 1960, was valid. It was the last mentioned agreement which permitted Nelsons to sell the house and also provided that in lieu of receiving rental income Messinger would receive from Nelsons the sum of $50.00 per month for life.

The trial court found that as of February 9, 1957, the Arrowhead Street house was rented for $50.00 per month; its market value was $6,000.00; the value of Messinger's life estate in the property was 23.-934% of the value and the worth of the remainder interest acquired by Nelsons was $4,561.96.

It appears that the value placed upon the life estate and remainder interest were based upon tables which are shown at page 339 Am.Jur.2d Desk Book. The same page contains a table showing the worth of an annuity.

Nelsons say that the court erred in using the tables apportioning the percentage of value between a life estate and remainder interest for the reason that when Messinger undertook to read the tables into the record objection was made and sustained by the court. It is further argued that the particular tables are inapplicable for the reason that the rental received by Messinger was net to her in that she had no obligation to pay taxes, insurance, or upkeep; that the proper table to have been employed by the court was the annuity table and by applying it the interest obtained by Nelsons was $2,580.90 instead of $4,561.96. The result being that the interest obtained by Nelsons in the Arrowhead Street house under the February 9th, 1957, agreement

was fair and reasonable in comparison with the value retained by Messinger.

Nelsons may be correct in their contention that the finding by the court of the value of the interest acquired by them under the February 9th, 1957, agreement is not supportable.

In our opinion, this finding was not necessary to the ultimate decision for the reason that the agreement of February 9th, 1957, was abrogated by the agreement of January 19, 1960. The finding of invalidity of the January 19, 1960, agreement was a basis for the final judgment.

Under the point of argument we are now considering Nelsons also contend that the agreement of January 19, 1960, was a valid agreement for the reason that the interest obtained by Nelsons in the house was fair and reasonable in comparison with the value retained by Messinger.

As we understand Nelsons they proceed upon the theory that in accordance with the trial court's decision the invalidity of the January 19, 1960, agreement is based upon inadequacy of consideration received by Messinger. In this respect they are only partially correct. The trial court made the following finding:

"In connection with each transaction and agreement between and conveyance from Messinger to Defendant, excepting only the loan transactions and the sale of the diamond ring, Defendant acted as attorney and adviser to Messinger while representing his own interests, which were adverse to those of Messinger, Defendant did not give to Messinger or to any disinterested person on behalf and capable of advising her, all essential information concerning the same, Messinger was not capable of understanding, assimilating or remembering such information as she did receive from Defendant or independently of achieving or obtaining full protection of her rights and satisfaction of her interests, and the value of the property, interest or right conveyed, granted or waived by Messinger in favor of Defendant greatly exceeded the value of the consideration received or to be received by Messinger from Defendant. The Court finds that the above and foregoing transactions between the attorney and his client were not made in the best of faith and were not made without an advantage to the attorney or disadvantage to his client; that said transactions were not fair and not equitable; that the client was not fully informed of her rights and interests; and that the attorney's actions are incompatible with the high fidelity he owed to his client as a member of the legal profession."

At this point we also refer to our previous statement relating to findings of the trial court having specific reference to the January 19, 1960, agreement.

Inadequacy of consideration is but one factor in determining whether a transaction between attorney and client is fair, others include a showing that the attorney made a full and frank disclosure of all relevant information that he had and that the client had independent advice before completing the transaction. McFail v. Braden, 19 Ill.2d 108, 166 N.E.2d 46 (1960). The duty owed by an attorney to his client is certainly no less exacting than that owed by a real estate broker to his principal, as held in Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226 (1965).

The trial court's conclusion that the agreement of January 19, 1960, was voidable may clearly be sustained upon the ground that Nelson failed to fully disclose all facts relating to the sale of the house which he was consummating, particularly with respect to the purchase price; further that Messinger had no independent advice before signing the agreement and deed.

We feel it appropriate here to state the well established rules which define the duties of an attorney in dealing with his client. The relationship has always been considered and treated as one of trust and confidence and consequently the law

requires that the acts and conduct of the attorney in transactions with his client be characterized by absolute fairness, good faith and honesty.

■ Contracts between client and attorney will be closely scrutinized by the courts and when a client challenges the fairness of such contract the attorney has the burden of showing not only that he used no undue influence but that in every particular he acted honestly and in good faith.

Appellants next assert that the trial court committed prejudicial error and abused its discretion in evaluating the services performed by Nelson and all reasonably necessary attendant costs between 1954 and January, 1963, at the sum of $3,000.00. Appellants contend there is no substantial evidence to support the trial court's finding that the reasonable value of Nelson's services for the period he represented Messinger, 1954 to July, 1963, was not more than $3,000.00.

■ To sustain their position appellants point to the testimony given by Nelson and the testimony of an expert witness who was called by Nelson. It is fundamental that the attorney has the burden of proving the value of services rendered by him and for which he claims payment or credit. Slade v. Harris, 105 Conn. 436, 135 A. 570 (1927); Southern Nat. Bank v. O'Brien, 175 N.C. 338, 95 S.E. 546 (1918); Schmalz v. Arnwine, 118 Or. 300, 246 P. 718 (1926); Closson v. Seaboard Sand & Gravel Corp., 238 App.Div. 584, 265 N.Y.S. 160 (1933); Compare In re Barth, supra; In re Renehan, 19 N.M. 640, 145 P. 111 (1914).

■ In determining the reasonable value of legal services the court could consider the interest of Nelson in weighing his testimony. Valdez v. Salazar, 45 N.M. 1, 107 P.2d 862 (1940). He could likewise apply the court's own experience and knowledge of the character of services involved. Spencer v. Collins, 156 Cal. 298, 104 P. 320 (1909); St. Louis-San Francisco Ry. Co., et al. v. Hurst, 198 Ark. 546, 129 S.W.2d 970, 122 A.L.R. 965 (1939); In re

Sanitary Dist. of Chicago Attorneys, 351 Ill. 206, 184 N.E. 332 (1933); United States v. Stringer, 124 F.Supp. 705, 15 Alaska 183 (D.Alaska 1954).

■ The opinion of an expert although uncontradicted is not conclusive of the fact in issue. Jamison v. Shelton, 35 N.M. 34, 289 P. 593 (1930). An exception, however, is noted in Ross v. Sayers Well Servicing Co., 76 N.M. 321, 414 P.2d 679 (1966). The fact finder may reject expert opinion evidence in whole or in part. Lopez v. Heesen, 69 N.M. 206, 365 P.2d 448 (1961).

■ We have carefully reviewed the entire record and find no basis to disturb the value as fixed by the trial court of the legal services. We do not overlook the fact that Nelson himself placed a valuation upon his own service for the period involved and for the lifetime of Messinger at $3,000.00.

Appellants' final point of argument is as follows:

"THE COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO ENTER AN INTERLOCUTORY ORDER PROVIDING FOR AN ACCOUNTING, DEFINING THE RIGHTS OF THE PARTIES AND THE PRINCIPLES UPON WHICH THE ACCOUNTING WOULD REST AND AFFORDING AN OPPORTUNITY FOR AN ACCOUNTING THEREUNDER; THE COURT ERRED IN ITS APPARENT DETERMINATION OF THE PROFITS MADE BY DEFENDANTS AS A RESULT OF THE TRANSACTIONS WITH MESSINGER."

■ In accordance with the record the trial of this case lasted some five days. Nelsons properly assumed the burden of proof as to the fairness of the transactions involved and proceeded to render an accounting. It was never suggested to the trial court that an accounting was not then available, or that an interlocutory order should be entered as a condition to

requiring an accounting. Clearly appellants cannot raise this matter for the first time on appeal. Mitchell v. Allison, 54 N.M. 56, 213 P.2d 231 (1949); Marquez v. Marquez, 74 N.M. 795, 399 P.2d 282 (1965).

By appellants' final point of argument they challenge the sufficiency of the evidence to support the trial court's finding of the value of the unimproved lots. It appears that after acquiring title to these lots from Messinger, Nelson sold one of them for $75.00. The remaining lots were combined with other parcels of land owned by Nelson and not involved in this action and all thereof traded for other real estate which was later sold by Nelson.

Messinger undertook to prove the value of the unimproved lots by establishing the purchase price received by Nelson for the tracts he had acquired through trade then deducting the value of land not involved and owned by Nelson with which the unimproved lots had been consolidated.

An objection was made and sustained by the trial court as to such proof of value. Counsel for Messinger then obtained leave to make a tender of proof. Except as to the facts developed as a part of the tender of proof there is no evidence which we have found in the record upon which a value of $6,700.00 of unimproved lots could be based.

 We find no support in the evidence for the following findings of fact:

"29. At the trial of the above entitled and numbered cause, Defendant stated that the value of the unimproved lots is $3,000.00. However, subsequent to October 27, 1960, Defendants sold one of said lots for $75.00 and, combining the remainder of said unimproved lots with four other items of real property then owned by Defendants, which Defendant valued at $300.00, $4,000.00, $750.00 and $750.00, exchanged all of said real properties for two houses in Truth or Consequences, New Mexico, which Defendant later sold for $6,500.00 and $6,000.00."

"45. * * *

(e) From the exchange of Unimproved Lots, profit to Defendant, being the value of the two houses sold of [sic] $12,500 less $5,800.00 the value of Defendants' property that went into the transaction * * * 6,700.00"

Appellee asserts that Nelson's right to question the sufficiency of the evidence upon which the findings were based was not preserved for review for the reason that no objections were made to such findings by motion or otherwise. In support of this proposition Duran v. Montoya, 56 N.M. 198, 242 P.2d 492 (1952) is cited. We there held that a party could not obtain a review of the evidence where he failed to make requested findings or file exceptions.

 In the case before us Nelsons submitted requested findings and consequently could obtain a review of the evidence without having filed exceptions or a motion to amend findings. § 21–1–1(52) (B) (b), N.M.S.A., 1953; Duran v. Montoya, supra.

The judgment of the district court is affirmed except as to that portion awarding appellee judgment against Nelson in the sum of $12,928.27, and as to such portion it is reversed and the cause remanded to the district court with directions to ascertain and find the value of the unimproved lots or require a conveyance by Nelsons of such lots to plaintiffs and re-determine the amount of the award.

It is so ordered.

CHAVEZ, C. J., NOBLE, MOISE and COMPTON, JJ., and SPIESS, Judge, Court of Appeals, concur.